# UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
   **PLAINTIFF,**

vs.

**YOBANI PENALOZA,**
  **a.k.a. "Jordan,"**
**SONYA REX-PATTERSON,**
**ALFRED KING Jr.,**
**MICHAEL MAGGARD,**
**WILLIAM HENTZLER,**
   **DEFENDANTS.**

CASE NO. 18-40044-01-05-DDC

**Filed Under Seal**

## SEALED INDICTMENT

**THE GRAND JURY CHARGES**:

**AT ALL MATERIAL TIMES**

### BACKGROUND

1. The Controlled Substances Act (CSA) prohibits the distribution of various listed drugs and other substances, and their immediate precursors. Controlled substances are drugs or other substances, "scheduled" by the CSA or corresponding regulations and include stimulants such as methamphetamine. Methamphetamine is a Schedule II controlled substance.

2. Prior to July 4, 2017, Sonya Rex-Patterson was a methamphetamine distributor and resident of Topeka, KS.

3. Between the late spring and early summer of 2017, a methamphetamine source of supply, known to the Grand Jury, but referred to in this indictment

as Unindicted Suspect-1 (US-1) along with Yobani Penaloza a.k.a. "Jordan" was introduced to a contact of Rex-Patterson's known to the Grand Jury, but referred to in this indictment as Unindicted Suspect-2 (US-2). US-1 was a resident of Topeka, KS and wholesale distributor of methamphetamine with associations in California.

4. Yobani Penaloza is a resident of San Bernadino, CA with ties to Las Vegas, NV. Penaloza is known to his criminal associates as "Jordan" and bears an "air Jordan" tattoo on his neck. Before the summer of 2017 and continuing throughout the duration of the conspiracy, Penaloza was engaged in the wholesale distribution of methamphetamine.

5. During the spring and summer of 2017, US-1 and Penaloza informed US-2 that they were aware Rex-Patterson was distributing methamphetamine in Topeka, KS and US-1 was interested using Rex-Patterson as a distributor for wholesale quantities of methamphetamine. US-1 and Rex-Patterson formed a business arrangement to distribute methamphetamine for profit. US-1 was responsible for acquiring bulk shipments of methamphetamine from California and arranging for its distribution by Rex-Patterson and others known and unknown to the Grand Jury.

6. On or about July 4, 2017, Penaloza contacted US-2 and informed him/her that he could offer Rex-Patterson methamphetamine at lower wholesale prices than offered by US-1. Between July 15, 2017 and July 18, 2017, Rex-Patterson and Michael Maggard traveled from Topeka, KS to Fontana, CA where they formed

an agreement with Penaloza to distribute methamphetamine. While in California, Rex-Patterson and Maggard purchased seven pounds of methamphetamine for $46,000.00. The methamphetamine was brought to Topeka, KS and resold.

7. To facilitate their distribution scheme, Penaloza would arrange for bulk shipments of methamphetamine to be transported by courier from California to Topeka, KS. Penaloza would then travel to Topeka, KS and arrive two to three days prior to the courier to ensure delivery and payment. Rex-Patterson would take control of the delivered methamphetamine for resale and provide payment either in bulk cash that was transported back to California by courier or through wire services to nominees of Penaloza.

8. Alfred King Jr., is a resident of Topeka, KS who maintained a premise on Michigan Avenue in central Topeka. The initial shipments of methamphetamine delivered during the course of the conspiracy were brought to King Jr.'s residence where they were offloaded in his garage. King Jr. would further acquire quantities of the delivered methamphetamine from Rex-Patterson for wholesale and retail distribution to persons known and unknown in Topeka, KS.

9. Starting in or around August 2017, shipments were delivered to the premises maintained by Rex-Patterson and Maggard on Ohio Street in Topeka, KS. Bulk shipments of methamphetamine from Penaloza would contain between six and seven pounds of methamphetamine each. Rex-Patterson and King Jr.,

would typically split the shipments equally. To oversee the successful receipt and delivery of the methamphetamine, and to collect profits, Penaloza traveled to Topeka, KS on at least four occasions including: on or about August 4, 2017; September 5, 2017; September 27, 2017; and October 18, 2017.

10. To further their illicit scheme, Maggard, Rex-Patterson, and King Jr. sold methamphetamine to Topeka residents including undercover police officers and Drug Enforcement Administration (DEA) informants. Distributions occurred at locations in Topeka, KS including the premises controlled by Rex-Patterson and King Jr.

11. In October 2017, the DEA executed search warrants at several locations in Topeka, KS, including US-1's, Rex-Patterson's and King Jr.'s residences. While executing a search warrant at US-1's residence, DEA agents identified an individual bearing an "air Jordan" tattoo, later determined to be Penaloza. Rex-Patterson and Maggard were not present when the warrant was executed at their residence and they briefly went into hiding. Simultaneously, on October 18, 2017, Penaloza traveled to Topeka, KS to attempt to exchange 21 pounds of methamphetamine.

12. On or after October 3, 2017, Rex-Patterson and Maggard discovered King Jr.'s residence had been searched by the DEA. In response, and suspecting they were targets of the DEA investigation, Rex-Patterson and Maggard arranged for William Hentzler to stash over one kilogram of methamphetamine for

4

safekeeping. On or about October 30, 2017, DEA seized the over one kilogram from Hentzler's residence.

## COUNT 1
### CONTROLLED SUBSTANCE CONSPIRACY

13. Paragraphs 1 through 12 are incorporated as though fully set forth.

14. On a date unknown to the Grand Jury, but on or before July 17, 2017, and continuing to on or about October 30, 2017, in the District of Kansas and elsewhere, the defendants,

**YOBANI PENALOZA,**
**SONYA REX-PATTERSON,**
**MICHAEL MAGGARD,**
**ALFRED KING Jr., and**
**WILLIAM HENTZLER,**

combined, conspired, confederated, and agreed together with each other, and with other persons known and unknown to the Grand Jury to possess with the intent to distribute and distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

The amount involved in the conspiracy attributable to each defendant as a result of his or her own conduct, and the conduct of other conspirators reasonably foreseeable to him is 50 grams or more of methamphetamine in violation of Title 21, United States Code, Section 841(b)(1)(A).

All in violation of Title 21, United States Code, Section 846, with reference to Title 18, United States Code, Section 2.

## COUNT 2
### DISTRIBUTION OF A CONTROLLED SUBSTANCE

15. Paragraphs 1 through 14 are incorporated as though fully set forth.

16. On or about August 9, 2017, in the District of Kansas, the defendant,

**ALFRED KING Jr.,**

knowingly and intentionally distributed 50 grams or more of methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) with reference to Title 21, United States Code, Section 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 3
### DISTRIBUTION OF A CONTROLLED SUBSTANCE

17. Paragraphs 1 through 16 are incorporated as though fully set forth.

18. On or about August 15, 2017, in the District of Kansas, the defendant,

**ALFRED KING Jr.,**

knowingly and intentionally distributed 50 grams or more of methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) with reference to Title 21, United States Code, Section 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 4
### DISTRIBUTION OF A CONTROLLED SUBSTANCE

19. Paragraphs 1 through 18 are incorporated as though fully set forth.

20. On or about September 21, 2017, in the District of Kansas, the defendant,

**SONYA REX-PATTERSON,**

knowingly and intentionally distributed 5 grams or more of methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) with reference to Title 21, United States Code, Section 841(b)(1)(B), and Title 18, United States Code, Section 2.

## COUNT 5
### POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE

21. Paragraphs 1 through 20 are incorporated as though fully set forth.

22. On or about October 3, 2017, in the District of Kansas, the defendant,

**ALFRED KING Jr.,**

knowingly and intentionally possessed with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) with reference to Title 21, United States Code, Section 841(b)(1)(A), and Title 18, United States Code, Section 2.

## COUNT 6
## POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE

23. Paragraphs 1 through 22 are incorporated as though fully set forth.

24. On or about October 30, 2017, in the District of Kansas, the defendant,

**WILLIAM HENTZLER**

knowingly and intentionally possessed with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance in violation of Title 21, United States Code, Section 841(a)(1) with reference to Title 21, United States Code, Section 841(b)(1)(A), and Title 18, United States Code, Section 2.

**A TRUE BILL.**

April 4, 2018              s/ Foreperson
DATE                       FOREPERSON OF THE GRAND JURY


 /s/ Skipper Jacobs #26848
for Stephen R. McAllister, #15845
UNITED STATES ATTORNEY
DISTRICT OF KANSAS
444 SE Quincy, Suite 290
Topeka, KS 66683
Phone: (785) 295-2850
Fax: (785) 295-2853
stephen.mcallister@usdoj.gov

[It is requested that trial be held in Topeka, Kansas.]